UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 15-CV-1478 (JFB) (GRB)
_____

BELLAVIA BLATT & CROSSETT, P.C.,

PLAINTIFF,

VERSUS

KEL & PARTNERS LLC D/B/A KEL & PARTNERS & KEL KELLY,

DEFENDANTS.
_____

**MEMORANDUM AND ORDER**
December 16, 2015
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Bellavia Blatt & Crossett, P.C. ("plaintiff") brings this action in diversity against defendants Kel & Partners LLC d/b/a Kel & Partners and Kel Kelly ("Kelly") (collectively, "defendants"), asserting a claim of defamation under New York state common law. Specifically, plaintiff alleges that defendants defamed plaintiff by posting a comment to an *Automotive News* webpage.

Defendants moved to dismiss plaintiff's cause of action for failure to state a claim under Rule 12(b)(6). At oral argument, this Court notified the parties that it was converting the motion to dismiss to a Rule 56 motion for summary judgment to consider certain evidence from the internet site submitted by defendants. Plaintiff's counsel advised the Court that plaintiff did not wish to conduct any discovery on that issue or submit any evidence. For the reasons set forth below, defendants' motion is granted in its entirety and the case is dismissed.

I. BACKGROUND

A. Facts

For purposes of the motion for summary judgment, the Court has taken the facts described below from the complaint ("Compl.") and from the exhibits submitted in connection with the pending motion. Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to plaintiff, the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

Plaintiff is a law firm that represents franchised or licensed automobile and marine

1

dealerships in an assortment of legal matters. (Compl. ¶ 7.) Defendant Kel & Partners LLC is a public relations firm and defendant Kel Kelly is a manager of the firm. (Compl. ¶¶ 12-13.) TrueCar, Inc. is a corporation that assists consumers in purchasing automobiles. (Compl. ¶ 14.) Kel & Partners was retained by TrueCar to provide public relations services. (Compl. ¶ 16.)

On or about March 9, 2015, plaintiff, on behalf of 117 of its automotive dealership clients, commenced a lawsuit against TrueCar in the United States District Court for the Southern District of New York entitled *Dependable Sales and Services, Inc. et al v. True Car, Inc.*, 15-CV-1742 ("True Car lawsuit"). (Compl. ¶ 20.) The True Car lawsuit asserted claims for, *inter alia*, false advertising and unfair competition under federal and state law. (Compl. ¶ 21.)

On or about March 9, 2015, the date that the True Car lawsuit was filed, an industry publication entitled *Automotive News* posted an article describing and summarizing the lawsuit. (Compl. ¶ 23.) At the bottom of the article, *Automotive News* wrote: "Have an opinion about this story? Click here to submit a Letter to the Editor, and we may publish it in print. Or submit an online comment below." (Def.'s Mem. Ex. A, Article and Comment Thread, at 6.) At the time that the motion was filed, 117 comments were submitted online in response to the story. (*Id.*) On March 10, 2015, Kelly posted the following comment:

> It is sadly becoming true that in order to be genuinely successful in modern business you must, at some point, become the target of fraudulent litigation. It's a reality that anyone in America can sue for any reason. The law firm behind this suit has a reputation for making a living by opportunistically attempting to sue others. Word of the street is they have been attempting to induce dealers to join this lawsuit for quite some time with the misleading promise of millions in reward. Additionally what is being whispered throughout the auto industry is that participating dealers must pay thousands of dollars to participate and the claims are just a fishing exercise. . . .

(Compl. ¶ 25.)

Others replied to Kelly's post, both positively and negatively, and individuals voiced a variety of opinions regarding the automotive industry and the lawsuit, among other topics. (Ex. A, at 6-21.)

B. Procedural History

On March 20, 2015, plaintiff filed the instant action. Defendants filed their motion to dismiss on August 3, 2015. Plaintiff filed its response on October 2, 2015, and defendants filed their reply on October 23, 2015. Oral argument was held on November 9, 2015.

Defendants' submissions on the motion to dismiss attached several exhibits including the entire *Automotive News* article and accompanying comment thread. In its opposition brief, plaintiff argued that "[t]he statements of other posters may not be considered by the Court in the context of this motion to dismiss, and should be disregarded." (Pl.'s Opp. at 10.) In response, defendants cited several cases, including *Brahms v. Carver*, 33 F. Supp. 3d 192 (E.D.N.Y. 2014), for the proposition that "courts deciding motions to dismiss based on statements made in Internet debates routinely examine the comments made by non-party participants in that debate." (Def.'s Reply at 7.) The Court agrees with defendants that "[a] court may consider on a Rule 12(b) motion,

2

in addition to the pleading itself, documents that are annexed to or referenced in the complaint [and] documents that the plaintiff relied on in bringing suit." *Brahms*, 33 F. Supp. 3d at 197 (citing *Chambers v. Time Warner*, 282 F.3d 147, 152-153 (2d Cir. 2002)); *see also Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006) ("'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.'") (alteration in original) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). However, in an abundance of caution, at oral argument, the Court gave plaintiff notice that it was converting the motion to dismiss into a motion for summary judgement under Rule 56 so that the Court could consider the context and surrounding circumstances of the *Automotive News* website in analyzing the defamation claim.

When materials are submitted on a motion to dismiss that are outside of the pleadings, the Court has discretion to either exclude these materials or convert the motion to dismiss into a motion for summary judgment. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2003); *see also Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) ("Federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment; 'this discretion generally will be exercised on the basis of the district court's determination of whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.'" (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, Civil § 1366 (3d ed. 2004))). If the Court decides to convert the motion to dismiss into a motion for summary judgment, the non-moving party must be given a "reasonable opportunity to meet facts outside the pleadings." *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985).

At oral argument, after notifying the parties that it was converting the motion to dismiss into a motion for summary judgement, plaintiff was given the opportunity to introduce evidence and/or undertake limited discovery on the issue, such as taking a deposition regarding the authenticity of the *Automotive News* website postings; plaintiff declined to do so on the record at oral argument. The Court has fully considered the parties' submissions.

II. DISCUSSION

A. Standard of Review

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits

or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

B. Application

An action for defamation that is expressed in writing or print is the common law cause of action of libel. *See Church of Scientology Int'l v. Behar,* 238 F.3d 168, 173 (2d Cir. 2001). The elements of libel under New York law are: (1) a false and defamatory statement of fact concerning the plaintiff; (2) that was published by the defendant to a third party; (3) due to the defendant's negligence (or actual malice, depending on the status of the person libeled); and (4) special damages or "*per se* actionability." *Celle v. Filipino Reporter Enters.,* 209 F.3d 163, 176 (2d Cir. 2000).

As the Second Circuit has repeatedly confirmed, "New York law absolutely protects statements of pure opinion, such that they can never be defamatory." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (citation and quotation marks omitted). Defendants argue that the challenged statements are opinions, not susceptible of defamatory meaning. As set forth below, the Court agrees with defendants and finds as a matter of law that Kelly's statements were nonactionable opinions.

"Categorizing a defendant's statements as either fact or opinion . . . is often not an easy task. As one commentator has noted, 'No

area of modern libel law can be murkier than the cavernous depths of this inquiry.'" *Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997) (quoting Sanford, *Libel and Privacy* § 5.1 (Supp. 1997)). Nevertheless, the "burden rests with the plaintiff to establish that in the context of the entire communication a disputed statement is not protected opinion." *Celle*, 209 F.3d at 179.

"As an initial matter, the inquiry into whether a statement should be viewed as one of fact or one of opinion must be made from the perspective of an ordinary reader of the statement." *Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985) (citation and quotation marks omitted); *see also Dworin v. Deutsch*, No. 06 Civ. 13265 (PKC), 2008 WL 508019, at *3 (S.D.N.Y. Feb. 22, 2008) ("The question is one of law for the court and one which must be answered on the basis of what the average person hearing or reading the communication would take it to mean.") (citation and quotation marks omitted); *Whitney Info. Network, Inc. v. Weiss*, No. 06-CV-6569, 2008 WL 731024, at *2 (E.D.N.Y. Mar. 18, 2008) ("The dispositive inquiry in this regard is whether a reasonable listener . . . could have concluded that [the defendant] was conveying facts about the plaintiff.") (alteration in original) (citation and quotation marks omitted).

Moreover, the Second Circuit has emphasized that courts should not consider the statement in question in isolation, but must analyze statements "in the context of the entire communication and of the circumstances in which they were . . . written. . . ." *Celle*, 209 F.3d at 178 (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 288 (N.Y. 1986)); *see also Flamm v. Am. Assoc. of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000) ("Since *Steinhilber*, the Court of Appeals of New York has consistently focused its analysis on the overall context in which the complained-of assertions were made."); *see also Dworin*, 2008 WL 508019, at *4 ("'[I]n distinguishing between actionable factual assertions and nonactionable opinion, the courts must consider the content of the communication as a whole, as well as its tone and apparent purpose.'") (alteration in original) (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 51 (N.Y. 1995)).

In particular, although the Second Circuit has emphasized that courts should "eschew any attempt . . . to reduce the problem of distinguishing fact from opinion to a rigid set of criteria which can be universally applied," *Celle*, 209 F.3d at 179 (citation and quotation marks omitted); *see also Jewell v. N.Y. Post*, 23 F. Supp. 2d 348, 376 (S.D.N.Y. 1998) ("Application of these three factors is not rigid and mechanical, and no single factor is dispositive."), the Second Circuit has set forth the following factors to guide the Court's inquiry:

> (1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion.

*Kirch*, 449 F.3d at 403 n.7 (citation and quotation marks omitted).

In applying these factors in various contexts, the Second Circuit and district courts therein have further noted certain specific characteristics that distinguish fact from opinion. One such distinction relates to certain rhetorical "indicators" that the writer or speaker is expressing an opinion. For instance, "the use of 'appeared to be,' 'might well be,' 'could well happen,' and 'should be' . . . signal presumptions and predictions rather than facts." *Flamm,* 201 F.3d at 154 (citation and quotation marks omitted); *see also Levin*, 119 F.3d at 197 ("When the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact."); *Dworin*, 2008 WL 508019, at *5 ("Deutsch gives numerous indicators – e.g., 'it seemed to me . . . ,' 'he didn't seem . . . ' – which signal to readers . . . that what is being read . . . is likely to be opinion, not fact.") (citation and quotation marks omitted). Similarly, "an opinion may be offered with such excessive language that a reasonable audience may not fairly conclude that the opinion has any basis in fact," such as the "type of speech often characterized as rhetorical hyperbole, parody, loose, or figurative." *Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2004 WL 2339759, at *12 (S.D.N.Y. Oct. 15, 2004) (citation and quotation marks omitted) (collecting cases).

Examining the specific language used in this case makes clear that Kelly's statements were rhetorical opinions rather than facts. Kelly's statement is full of qualifiers – such as "reputation," "word of the street" and "whispered" – which make clear that her statement is one of opinion. *See 600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 143 (N.Y. 1992) (finding use of "colloquial and loose term[ ] 'smells of' . . . by its nature conveys to listeners that [the defendant] has no hard facts, only generalized suspicions"); *Vengroff v. Coyle*, 647 N.Y.S.2d 530, 531 (N.Y. App. Div. 1996) (finding that "given the use of the words 'apparently,' 'rumored,' and 'reportedly' in the letter, a reasonable reader would understand the statements made about the plaintiffs 'as mere *allegations* to be investigated rather than as *facts*'") (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 53 (N.Y. 1995) (emphasis in original)).

Although plaintiff argues Kelly's use of the word "fraudulent" conveys that it "was being offered as a fact," (Pl.'s Opp. at 7-8), as defendants note, courts have found that use of the word "fraud" can be offered as a statement of opinion rather than as a factual declaration. *See 600 W. 115th St. Corp*, 80 N.Y.2d at 143 (finding statement that "the lease and proposition . . . is as fraudulent as you can get and it smells of bribery and corruption" would be understood as opinion given defendant's choice of "colloquial and loose terms 'smells of' and 'fraudulent as you can get'" as well as overall nature of remarks made at the hearing); *Silvercorp Metals Inc. v. Anthion Mgmt. LLC*, 959 N.Y.S.2d 92, 2012 WL 3569952, at *9 (N.Y. Sup. Ct. 2012) (finding accusation of "massive accounting fraud" would be understood as opinion where letter indicates it is an expression of the author's belief and that the author was self-interested); *Penn Warranty Corp v. DiGiovanni,* 810 N.Y.S.2d 807, 815 (N.Y. Sup. Ct. 2005) (finding allegations of fraud were opinion where the context of the website made clear that defendant was a "disgruntled consumer and that his statements reflect his personal opinion based upon his personal dealing with plaintiff"); *cf. Trustco Bank of New York v. Capital Newspaper Div. of Hearst Corp.,* 624 N.Y.S.2d 291, 293 (N.Y. App. Div. 1995) (finding that use of the word extortion was not actionable because "[d]epending on the context in which it is used, such an accusation can be understood as mere rhetorical

hyperbole or a vigorous epithet, which is not actionable") (citation and quotation marks omitted); *Konig v. CSC Holdings, LLC*, 977 N.Y.S.2d 756, 758 (N.Y. App. Div. 2013) (finding that "given the context in which the challenged statements were made, on an Internet blog during a sharply contested election, a reasonable reader would have believed that the generalized reference to 'downright criminal actions' in a post entitled 'Would You Buy A Used Car From These Men?' was merely conveying opinion, and was not a factual accusation of criminal conduct"). Similarly, here, the surrounding circumstances, such as the qualifiers throughout Kelly's statement, make clear that use of the word "fraudulent" conveys Kelly's opinion.

Further, "[i]n addition to considering the immediate context in which the disputed words appear, the courts are required to take into consideration the larger context in which the statements were published, including the nature of the particular forum." *Brian*, 87 N.Y.2d at 51. New York courts have consistently protected statements made in online forums as statements of opinion rather than fact. *See, e.g.*, *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 415-16 (N.Y. App. Div. 2011) (noting that "[t]he culture of Internet communications, as distinct from that of print media such as newspapers and magazines, has been characterized as encouraging a free-wheeling, anything-goes writing style" and that readers "give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts"); *Brahams v. Carter*, 33 F. Supp. 3d 192, 199 (E.D.N.Y. 2014) (finding statement was nonactionable opinion where it was "made on an internet forum where people typically solicit and express opinions"); *Biro v. Conde Nast*, No. 11-CV-4442 JPO, 2014 WL 4851901, at *4 (S.D.N.Y. Sept. 30, 2014) (noting that determination that plaintiff failed to state a defamation claim was "buttressed by the context of the publications in question: an online website that was essentially a blog"); *Versaci v. Richie*, 815 N.Y.S.2d 350, 351 (N.Y. App. Div. 2006) (finding statement made on "Internet public message board, which, as characterized even by plaintiff, is a forum where people air concerns about any matter" was opinion). Like the circumstances in *Sandals*, *Brahams*, *Biro*, and *Versaci*, here, Kelly made statements in an internet comment section in response to an article that invited readers to post their comments if they had an opinion about the story, (*see* Ex. A, at 6), further supporting the notion that Kelly's statements were ones of opinion.[1]

Obviously, these aforementioned cases do not stand for the proposition that no comments posted on an online forum can ever be found to be defamatory. If the comments were based on undisclosed facts, such comments could certainly be defamatory. *See Steinhiber v. Alphonse*, 68

---

[1] Additionally, to the extent that the online forum at the end of the article is considered an electronic version of a letter to the editor because it was prompted as an alterative to submitting a formal Letter to the Editor, (*see* Ex. A, at 6), courts have routinely protected statements made in letters to the editor or opinion portions of a news source as nonactionable opinions. *See, e.g.*, *Brian*, 87 N.Y.2d at 53 ("[T]he common expectation is that the columns and articles published on a newspaper's Op Ed sections will represent the viewpoints of their authors and, as such, contain considerable hyperbole, speculation, diversified forms of expression and opinion. Thus, the 'broader context' in which [the article] was published provided some signals to the reader that its contents were expressions of opinion."); *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 253 (N.Y. 1991) ("[T]he common expectation of a letter to the editor is not that it will serve as a vehicle for the rigorous and comprehensive presentation of factual matter but as one principally for the expression of individual opinion.") (citation and quotation marks omitted).

N.Y.2d 283, 289 (N.Y. 1986) ("When, however, the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is actionable.") However, to the extent that plaintiff argues that Kelly's comments were based on undisclosed facts, the posting itself does not bear that out. Although Kelly does not specifically confine her comments to responding to information disclosed in the *Automotive News* article, she makes clear that any alternative basis for her comments is founded in rumor. She writes that "[t]he lawfirm behind this suit has a *reputation* for making a living by opportunistically attempting to sue others"; "*[w]ord of the street* is they have been attempting to induce dealers to join this suit for quite some time with the misleading promise of millions in reward"; and "what is being *whispered* throughout the auto industry is that participating dealers must pay thousands of dollars to participate and the claims are just a fishing exercise." (Ex. A, at 13) (emphases added). No reasonable reader would understand Kelly's claims to be based on undisclosed facts when she makes clear that they are based on rumors. *See Vengroff*, 647 N.Y.S.2d at 531 (finding that reasonable reader would understand use of the words "apparently," "rumored," and "reportedly" rendered the statements "'mere *allegations* to be investigated rather than as *facts*'") (quoting *Brian*, 87 N.Y.2d at 53 (emphasis in original)); *Varrenti v. Gannett Co., Inc.*, 929 N.Y.S.2d 671, 677 (N.Y. Sup. Ct. 2011) (finding comments were nonactionable opinions where they were "based on rumors that the anonymous posters heard around [the town]"). Accordingly, because Kelly's statements were made on an online forum where individuals are expected to express opinions and she made clear that her comments were merely stating her opinions, a reasonable reader would understand Kelly's comments as allegations or opinions rather than comments based on undisclosed facts.

Additionally, the context of the forum where the statements were made confirms that the readers understood the comments posted to be opinions. The comments were prompted by *Automotive News* website, which stated at the end of the article: "Have an *opinion* about this story? Click here to submit a Letter to the Editor, and we may publish it in print. Or submit an online comment below." (Ex. A, at 6.) (emphasis added). Further, the nature of the comments posted by other participants indicates that the contributors understood the language posted to be opinions. *See, e.g.*, *id.* at 21 ("[I]n my opinion, you are spot on"); *id.* at 20 ("The whole idea [of the forum] is to encourage opinions without fear of retribution."); *id.* at 18 ("While I respect your opinion and might take your good counsel . . . .").

Moreover, where circumstances surrounding an allegedly defamatory statement indicate that the person making the statement has a special interest in the matter, courts have routinely held that a reasonable observer would understand such a statement to be one of opinion, rather than fact. *See Brian*, 87 N.Y.2d at 53 (holding statements in article were nonactionable opinion where author disclosed that he had been the attorney for a company at issue "thereby signaling that he was not a disinterested observer"); *Silvercorp Metals Inc.*, 2012 WL 3569952, at *9 ("The documents themselves reveal the disclosure of the author's self interest . . . . Such motive . . . indicates to the reader that the author is expressing his opinion.") In connection with Kelly's allegedly defamatory post, other individuals challenged her comments and claimed that she was biased due to her past work for TrueCar. *See* Ex. A, at 13 ("It seems clear that you, Kel Kelly, work for TrueCar."); *id.* at 14

("[Y]ou confessed below to being TrueCar's PR firm . . . 'I love companies who elevate an industry . . .' or did you mean 'elevate my bank account.'") Such comments pointing out that readers were aware of Kelly's self-interest further establish that her comments were understood as opinions, not fact.

Accordingly, because the specific language used and the context of the online forum where the statements were posted make clear that Kelly's statements were opinions rather than statements of fact, they are not actionable and thus, summary judgment must be granted for defendants.[2]

### III. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:   December 16, 2015
         Central Islip, NY

\*\*\*

Plaintiff is represented by Shaun Malone of Bellavia Blatt & Crossett, P.C., 200 Old Country Road, Suite 400, Mineola, NY 11501. Defendants are represented by Michael Tremonte and Erica Wolff of Sher Tremonte LLP, 80 Broad Street, 13th Floor, New York, NY 10004.

---

[2] Because the Court has determined that the statements at issue are nonactionable opinion, it need not consider defendants' alternative arguments that plaintiff is a limited purpose public figure and has failed to plausibly allege that defendants acted with actual malice, or that the complaint fails to state a claim against defendant Kel & Partners.